908 F.2d 400
 Bankr. L. Rep. P 73,539
In re Charles Alexander KERR, Debtor.
FIRST NATIONAL BANK OF SIOUX CITY; Nancy Kerr; United
States of America acting through Commodity Credit, Appellees,
v.
Charles Alexander KERR, Appellants.
In re CHANCE LAND & INVESTMENT COMPANY, INC., Debtor.
CHANCE LAND & INVESTMENT COMPANY, INC., Appellant,
v.
FIRST NATIONAL BANK IN SIOUX CITY; Nancy Kerr, Appellees.
 Nos. 88-2348, 89-1611.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 15, 1989.
Decided July 17, 1990.
 
 John Harmelink, Yankton, S.D., for appellant.
 Donald H. Molstad, Sioux City, Iowa, for appellee Nancy Kerr.
 George F. Madsen, Sioux City, Iowa, for appellee First Nat. Bank of Sioux City.
 Before WOLLMAN, Circuit Judge; HEANEY, Senior Circuit Judge; and WEBB,* District Judge.
 HEANEY, Senior Circuit Judge.
 
 
 1
 Chance Land & Investment Company and its principal owner, Charles Kerr, appeal the judgment of the district court affirming the dismissals of their separate Chapter 11 bankruptcy petitions. The bankruptcy court concluded that each had shown bad faith and that neither could present a workable plan of reorganization. The bankruptcy court prohibited refiling for 180 days. The debtors' appeals have been consolidated. Both argue that they were entitled to a hearing to determine whether the company's land was purchased for less than fair value by a secured creditor. We affirm in both cases.
 
 I. Background
 
 2
 Chance Land is an Iowa farm corporation whose principal asset is farmland. Charles Kerr owns more than 90 percent of Chance Land's stock and is also its president and controlling director. Charles Kerr also owns and operates Chance Acre, a farm management company that operates a number of Chance Land's farms in return for a sixty percent share of the crop.
 
 
 3
 Chance Land and Charles Kerr have filed several bankruptcy petitions over the last six years. Chance Land first filed for protection under Chapter 11 in June 1984. That case was dismissed in August 1986 for delay, questionable intent, failure to comply with local rules, failure to file monthly reports, and failure to comply with court orders. In re Chance Land, No. 86-02250S, Order 7-14 (Bankr.N.D.Iowa Nov. 27, 1987) (Order). In October 1986, Chance Land refiled under Chapter 11. On February 13, 1987, Chance Land submitted a reorganization plan and disclosure statement which assumed that its land had been sold at the price it estimated to be fair value (First Plan). On April 13, 1987, Chance Land filed an amended statement and plan (First Amended Plan). Thereafter, the bankruptcy court held a hearing on this plan.[1] In November 1987, the bankruptcy court granted the creditors' motion for dismissal for bad faith and because Chance Land was unable to submit a feasible reorganization plan.
 
 
 4
 During the pendency of Chance Land's petitions, two sheriff's sales of the company's land were held. First National Bank of Sioux City (Bank), a secured creditor, purchased the land on each occasion. The Bank purchased 1,640 acres for $282,819.89, approximately $172 per acre. The purchase price was the exact amount of the Bank's initial judgment lien. The Bank subsequently purchased another 620 acres for $198,400, or $320 per acre. This represented partial satisfaction of a second judgment lien in the amount of $903,904.18. Chance Land argued that there was fraud or a preferential transfer in the sale of its land and requested that both sales be set aside. Despite the debtor's request, no hearing was ever held to determine if the Bank had paid fair value. The district court affirmed the dismissal but suggested that the bankruptcy court should have held a hearing on the land sale claim. See In re Chance Land, No. C 87-4205, Mem.Op. 5-6 (N.D.Iowa Nov. 16, 1988).[2]
 
 
 5
 Charles Kerr has filed for bankruptcy four times. His first petition was filed at the same time as Chance Land's first petition and was dismissed for the same reasons. Kerr's second petition was filed at the same time as Chance Land's second petition. It was dismissed in December 1986 for willful failure to comply with court orders, and he was not allowed to refile for 180 days. In April 1987, Kerr refiled under Chapter 12. This petition was dismissed in June because Kerr did not qualify under Chapter 12. Kerr filed for bankruptcy a fourth time in July 1987. His petition was dismissed for bad faith and failure to submit a plausible plan shortly after the second Chance Land petition was dismissed. The debtors' appeals have been consolidated, and they have posted a $100,000 bond on appeal. Chance Acre has never filed for protection.
 
 
 6
 II. Financial Condition & Ability to Reorganize
 
 
 7
 All creditor claims against Chance Land and Charles Kerr were guaranteed by the other. In reviewing their financial condition, we thus consider the debtors together. The bankruptcy court's conclusions of law are reviewed de novo, and we will set aside a finding of fact only if it is clearly erroneous. Wegner v. Grunewaldt, 821 F.2d 1317, 1320 (8th Cir.1987).[3] Initially, we set forth the financial information found in the disclosure statement that accompanied the rejected reorganization plan.[4]
 
 
 8
 According to Chance Land's First Amended Disclosure Statement, it owned approximately 3,800 acres of land at the outset of its financial problems. First Amended Disclosure Statement at 2. Charles Kerr owned an additional 1,200 acres. Their principal creditor is the Bank, which held a claim of $1,245,033.[5] The First Amended Disclosure Statement recognized a secured debt to Nancy Kerr, Charles Kerr's former wife, for $230,410. Id. at 7.[6] The First Amended Disclosure Statement recognized other secured claims totaling $407,000. Id. at 6-7. Chance Land proposed rescission of both land sales, followed by the abandonment to the Bank of 1,200 acres with an estimated value of $585 per acre. Chance Land offered to give the Bank a mortgage on the remaining land for any secured debt and proposed treating the remaining $643,046.13 of the Bank's debt as unsecured. The First Amended Plan proposed giving Nancy Kerr, for her secured claim against Chance Land, 240 acres of land and a claim against Charles Kerr personally for the remainder. By its own estimates, Chance Land would keep $633,950 worth of land valued at between $400 and $450 per acre.[7]
 
 
 9
 If Chance Land and Charles Kerr had petitioned for liquidation and if their land was worth $500 an acre, then their 5,000 acres would seemingly have been worth enough to satisfy their debts. They filed for reorganization, however, and the bankruptcy court properly focused on whether the debtors would be able to consolidate their position and generate income.
 
 
 10
 The bankruptcy court concluded that the First Amended Plan was unworkable and unfair to the creditors. The accompanying financial reports disclosed that on September 1, 1984, Chance Land had a cash balance of $477.70. Three years later, its cash balance was only $7,841. During that time, few payments to creditors had been made. The cash surplus for the twelve-month period ending in October 1987 was only $15,375.84. At the same time, hundreds of thousands of dollars in interest and real estate taxes had accrued in excess of Chance Land's estimates. Order at 14-16. The court concluded that the plan was unworkable. It also concluded that the plan was unfair to the creditors because it allowed the debtors to retain valuable real estate while paying far less than what was owed to the creditors. Id. at 8. After a hearing, the bankruptcy court concluded that Charles Kerr's ability to reorganize was dependent on Chance Land's prospects and dismissed his petition as well. In re Charles Kerr, No. 87-01641S, hearing transcript 110 (Bankr.N.D.Iowa Jan. 21, 1988) (Kerr Hearing); Appellees' Supplemental Appendix at 1083.
 
 
 11
 We believe these findings are supported by substantial evidence. Even if the debtors prevailed on their claim against the Bank, any reorganization plan would have to involve substantial yearly payments to satisfy secured debts of more than $1,000,000 plus accruing interest and taxes. It is not plausible that Chance Land will be able to generate the necessary income. The company's federal tax returns for the years 1983 through 1985 show a net taxable income of $7,221 for the period despite the bankruptcy court's protection for much of that time. Second Disclosure Statement, ex. 9. It is not apparent that the reorganization plan would improve the debtors' income generation.[8] We also agree that Charles Kerr failed to submit any evidence which showed that he would be able to reorganize.
 
 
 12
 We nevertheless agree with the district court that a hearing should have been held regarding the value of the land sold to the Bank. Clarifying the amount due the Bank is essential to sorting through the claims of the other creditors and in preserving the rights of the debtors. It would behoove all the creditors to see that such a hearing is held as early as is practicable. Nothing in our decision, nor anything in any decision made in the course of this proceeding, will preclude the debtors from raising this claim in an appropriate forum. We affirm the dismissal of both petitions because neither debtor was able over a three-year period to submit a plausible reorganization plan.
 
 III. Bad Faith
 
 13
 The bankruptcy court found that both debtors acted in bad faith. The bankruptcy court may dismiss a petition for cause under 11 U.S.C.A. Sec. 1112(b) (West Supp.1990). Although not included in the accompanying nonexhaustive list of grounds for dismissal, we agree with other courts which have considered the issue that bankruptcy courts may dismiss cases under this section for bad faith.[9] Determining bad faith, however, requires a difficult distinction between permissible and impermissible motives. Debtors often wish to shelter whatever assets they can from their creditors, and the Bankruptcy Code permits them to do so. See, e.g., In re Johnson, 880 F.2d 78, 79-80 (8th Cir.1989). We therefore must require a pattern of concealment, evasion, and direct violations of the Code or court order which clearly establishes an improper motive before allowing dismissals for bad faith. Cf. id. at 80, 82.
 
 
 14
 After carefully reviewing the record, we agree that there is strong evidence in support of the bankruptcy court's finding of bad faith. The debtors violated court orders by failing to provide monthly financial reports and by failing to segregate and account for dealings with Chance Acre. There was a pattern of evasiveness and feigned losses of memory during hearings. Chance Land refused to regard the Bank's debt as fully secured, refused to acknowledge the full amount owed Nancy Kerr, and failed to recognize federal tax liability. There was also a substantial amount of self-dealing and asset manipulation without court approval: assets were commingled with Chance Acre; land was sold at less than value to Kerr's current wife with the taxes paid; more than $79,000 was distributed from Chance Land to Kerr; more than $20,000 was paid to Kerr's stockbrokers to cover stock losses; and a personal bond of more than $20,000 was posted by Chance Land on behalf of Charles Kerr. In addition, countless frivolous motions were introduced and actions commenced in an effort to frustrate the creditors. Many were clearly groundless and had already led both the federal district court and Iowa state court to sanction the debtors and their attorney. Order at 7-14; Kerr Hearing at 104-11; Kerr v. First National Bank, Order (N.D.Iowa July 7, 1988). The bankruptcy court also found that reorganization was impossible.[10]
 
 IV. Conclusion
 
 15
 We are satisfied after a careful review of the record that the bankruptcy court's conclusions are not clearly erroneous. Because the bankruptcy court could properly dismiss both debtors' petitions for cause, it was entitled to prohibit either from refiling for 180 days after entry of the order.[11] If the debtors refile their petitions, the bankruptcy court should hold a hearing on their claim against the Bank. The bankruptcy court may condition the grant of that hearing on the submission of accurate financial reports by the debtors.
 
 
 
 *
 The Honorable Rodney S. Webb, United States District Judge for the District of North Dakota, sitting by designation
 
 
 [1]
 Chance Land filed a third reorganization plan and disclosure statement on June 26, 1987 (Second Amended Plan). The Second Amended Plan was not scheduled for a disclosure hearing at the debtor's request. Motion for Stay Pending Appeal, hearing transcript 33, 35 (Bankr.N.D.Iowa April 12, 1988)
 
 
 [2]
 It is not apparent what specific legal and factual allegations the debtors would make in such a hearing. We do not pass judgment on the merits of their claim
 
 
 [3]
 The appellees argue that we should not reach the merits because Chance Land's notice of appeal was defective. The district court affirmed the bankruptcy court's decision on November 17, 1988. Chance Land filed for rehearing, which stays the running of the time for appeal. The district court's order denying rehearing was entered at 8:00 a.m., December 20, 1988. Chance Land's notice of appeal was entered on December 19, 1988. The district court subsequently ordered the clerk to regard the denial of the rehearing as having been filed on December 19. We reject the appellees' claim for several reasons. First, this claim runs only against Chance Land. Chance Land's position must be evaluated in reviewing the bankruptcy court's judgment in the Kerr case. Because the bankruptcy court's judgment as to Chance Land is supported by the record, the appellees' claim leads to no material difference in our approach. Second, Torres v. Oakland Scavenger Co., 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988), does not control this case. There, the name of a party was not included in a notice of appeal through the fault of counsel, and the Supreme Court refused to allow any subsequent correction. Here, the district court corrected its own docket
 
 
 [4]
 Because we are reviewing the adequacy of the bankruptcy court's judgment, we focus on the First Amended Reorganization Plan that was considered and rejected by the bankruptcy court. We consider only briefly the numbers contained in the appellants' brief and in the other plans. For example, Chance Land used different calculations of the value of its land at the time of its sale on each occasion. In its First Plan, Chance Land estimated land value at $562 per acre. In re Chance Land, Chapter 11 Disclosure Statement 3 (February 13, 1987) (First Disclosure Statement). In its First Amended Plan, it used values of $400, $450, and $585 per acre, assigning the higher valuation to the land it proposed to give the Bank to reduce its debt. In re Chance Land, First Amended Chapter 11 Disclosure Statement 4, 9-10 (Bankr.N.D. Iowa April 13, 1987) (First Amended Disclosure Statement). In its Second Amended Plan, it used a value of $450 per acre. In re Chance Land, Second Amended Chapter 11 Disclosure Statement 3 (June 26, 1987) (Second Disclosure Statement). In their brief, the debtors use a value of $500 per acre. Appellants' Brief at 6. The various plans also differ significantly in the extent to which they recognize debts owed to others, the amount of the debts, and the status of parties as secured or unsecured creditors
 The debtors argue that the bankruptcy court was confused and mistakenly considered only Chance Land's First Amended Disclosure Statement and Plan in dismissing both petitions. This is an erroneous reading of the record. As indicated, the bankruptcy court did not hold a hearing on the Second Amended Plan at the debtor's request. See supra note 1. On appeal, the debtors include only the Second Amended Disclosure Statement and Plan in their appendix and refer extensively to it in their brief as evidence that the bankruptcy court's conclusions about the First Amended Plan were erroneous. They do not argue that the bankruptcy court erred when it stated on the record that no hearing was held on the Second Amended Disclosure Statement and Plan at Chance Land's request. Instead, the debtors choose to argue that the bankruptcy court got confused between the plans and neglected to consider the last one. Appellants' Brief at 11-13, 31-33. We reject this argument.
 
 
 [5]
 Chance Land's First Disclosure Statement recognized this debt as only one-third secured. The First Amended Disclosure Statement recognized it as one-half secured. The bankruptcy court found that it was fully secured
 
 
 [6]
 The First Disclosure Statement did not recognize any debt to Nancy Kerr. The Second Amended Disclosure Statement recognized a debt of more than $360,000
 
 
 [7]
 We must confess that the numbers contained in Chance Land's First Amended Statement do not add up. If Chance Land transferred to the Bank and Nancy Kerr 1,440 acres, it would be left with 2,360 acres. At a total value of $633,950, the land retained would average a value of $269 an acre. At $400 an acre, the land Chance Land proposed to retain would be worth nearly $1,000,000
 
 
 [8]
 The Second Amended Disclosure Statement was no more convincing. The plan assumed that the debtors prevailed on their claim against the Bank and proposed reducing the debt to the Bank by another $255,833 by trading 1,077 acres of land for 428 acres held by the Bank. Second Amended Plan at 4. The plan also proposed giving land to Nancy Kerr. Second Amended Disclosure Statement at 12. Yet, the debtors projected net profits from corn and soybeans grown on less land than before of $67,521 in 1987. Id., ex. 1
 
 
 [9]
 See, e.g., In re Jartran, Inc., 886 F.2d 859, 867 (7th Cir.1989); Carolin Corp. v. Miller, 886 F.2d 693, 698-700 (4th Cir.1989); In re Natural Land Corp., 825 F.2d 296, 298 (11th Cir.1987); Matter of Little Creek Development Co., 779 F.2d 1068, 1071-72 (5th Cir.1986); In re Winshall Settlor's Trust, 758 F.2d 1136, 1137 (6th Cir.1985)
 
 
 [10]
 The Fourth Circuit requires that where the debtor has made a full disclosure of financial information sufficient to enable the bankruptcy court to assess the debtor's condition, the court must also find that reorganization is objectively futile before dismissing the petition. Carolin Corp. v. Miller, 886 F.2d at 700-02. The Eleventh Circuit permits dismissal for bad faith alone. In Re Phoenix Piccadilly, Ltd., 849 F.2d 1393, 1395 (11th Cir.1988). We need not decide which approach is preferrable in light of the facts of this case, nor was the issue briefed
 
 
 [11]
 See 11 U.S.C.A. Sec. 109(g) (West Supp.1990) (mandatory 180-day refiling delay for certain dismissals). The bankruptcy court noted that it could enjoin refiling for as long as six months under section 105(a) (general powers) or section 349(a) (effect of dismissal). The better view is that the more specific provisions of section 109(g) control in this case