# United States Bankruptcy Appellate Panel

## For the Eighth Circuit

_____

No. 16-6008

_____

In re: Michael Robert Wigley

*Debtor*

------------------------------

Lariat Companies, Inc.

*Creditor - Appellant*

v.

Michael Robert Wigley

*Debtor - Appellee*

Barbara Wigley

*Interested party - Appellee*

_____

Appeal from United States Bankruptcy Court
for the District of Minnesota - Minneapolis

_____

Submitted: August 12, 2016
Filed: September 21, 2016

_____

Before SCHERMER, NAIL and SHODEEN, Bankruptcy Judges.

_____

SCHERMER, Bankruptcy Judge

Creditor, Lariat Companies, Inc. (Lariat), appeals from: (1) the bankruptcy court's[1] November 18, 2015 order denying Lariat's request to dismiss the Chapter 11 case of debtor, Michael Robert Wigley (Debtor), or to convert the case to Chapter 7, denying confirmation of the Debtor's second modified Chapter 11 plan, and establishing deadlines for the Debtor to file a modified plan and obtain confirmation of it (November 18 Order);[2] and (2) the bankruptcy court's February 18, 2016 order confirming the Debtor's fourth modified Chapter 11 plan. We have jurisdiction over this appeal from the final order of the bankruptcy court.[3] *See* 28 U.S.C. § 158(b). For the reasons that follow, we affirm.

## ISSUE

The main issue on appeal is whether the bankruptcy court properly denied Lariat's request to dismiss the Debtor's case or convert it to Chapter 7, resulting in the ultimate confirmation of the Debtor's fourth modified Chapter 11 plan. We see no error with the bankruptcy court's decisions.

## BACKGROUND

This dispute arises in the Debtor's Chapter 11 bankruptcy case. An outline of the litigation leading to the Chapter 11 bankruptcy filing is relevant.

---

[1]     The Honorable Katherine A. Constantine, United States Bankruptcy Judge for the District of Minnesota.

[2]     Lariat states that it only appeals the portions of the order denying its requests for dismissal or conversion, and we consider only those issues in this appeal.

[3]     We review the November 18, 2015 order in connection with the February 18, 2016 order, which is a final order. We have jurisdiction over "the events and rulings leading to a final order." *Zahn . Fink (In re Zahn),* 526 F.3d 1140, 1143 (8th Cir. 2008).

## Events Prior to the Debtor's Bankruptcy Case

Pre-petition, the Debtor personally guaranteed the lease obligations of an LLC he had formed (Baja Sol Cantina EP, LLC). The lease was entered into by the LLC (as lessee) with Lariat (as lessor). After the LLC defaulted on the lease and Lariat evicted it from the premises, Lariat sued the LLC and the Debtor. The state court awarded Lariat summary judgment against both parties for an amount of over $2.2 million in damages. The state court of appeals affirmed the judgment.

Litigation also commenced in bankruptcy court. Lariat (along with other creditors) filed an involuntary Chapter 7 bankruptcy petition against the Debtor, which was dismissed by consent of the parties. Following the filing of the involuntary petition, Lariat and the other petitioning creditors commenced a fraudulent transfer action against the Debtor's wife in state court. They added the Debtor as a co-defendant after his involuntary bankruptcy case was dismissed. Ultimately, the Debtor and his wife were held jointly and severally liable to Lariat for fraudulent transfers totaling approximately $800,000.

The Debtor and his wife later moved in the state court for amended findings in the fraudulent transfer action. On the petition date of the Debtor's Chapter 11 case, the state court had not ruled on the motion for amended findings and the Debtor believed that the automatic stay applied to the fraudulent transfer proceeding.

The Debtor also initiated litigation. He filed a suit against Lariat in state court seeking relief from the judgment in the guarantee action. The state court granted Lariat's motion to dismiss the Debtor's complaint. The appeal of the state court's decision was stayed by the Debtor's filing of his Chapter 11 petition, and it remains pending.

One month prior to the Debtor's filing of his Chapter 11 bankruptcy petition, the Debtor's LLC filed its own Chapter 11 petition. In that case, the LLC commenced

an adversary proceeding (which was ultimately dismissed) seeking to enjoin Lariat from enforcing its judgment in the guarantee action against the Debtor. On the motion of the United States Trustee, the LLC's Chapter 11 case was dismissed.

After attempts by the Debtor to avoid such a ruling, the state court in the guarantee action granted a motion by Lariat for application of assets to the judgment (Assets Order). The Assets Order required the Debtor to provide an updated accounting of his assets and mandated (upon the request of Lariat) the surrender of the Debtor's non-exempt property to Lariat. Lariat was authorized to liquidate the Debtor's non-exempt property to satisfy the judgment in the guarantee action, and any person or entity who owed money to the Debtor was ordered to pay the funds to Lariat instead.

## The Debtor's Bankruptcy Case

On February 10, 2014, ten days after the entry of the Assets Order, the Debtor filed his Chapter 11 bankruptcy petition. On his schedules, the Debtor listed assets exceeding the amount of his liabilities. Lariat's guarantee judgment in the Debtor's bankruptcy case was capped under Bankruptcy Code § 502(b)(6).[4]

The Debtor filed his Second Modified Plan of Reorganization (Second Modified Plan), which proposed to release his wife, Barbara Wigley, from all claims held against her by the Debtor or the estate (eliminating Lariat's fraudulent transfer judgment against her) in exchange for her settlement payment. Lariat objected to the Second Modified Plan and filed a motion seeking dismissal or conversion of the

---

[4] Lariat appealed the bankruptcy court's order capping its proof of claim under § 502(b)(6). We affirmed in part, reversed in part and remanded to the bankruptcy court for further proceedings. Following our opinion, the bankruptcy court entered an order allowing Lariat's claim in an amount certain. That order has not been appealed.

Debtor's case to Chapter 7 (specifying a preference for dismissal over conversion) for bad faith. On November 18, 2015, the bankruptcy court denied Lariat's motion to dismiss or covert, denied confirmation of the Second Modified Plan, and established deadlines for the Debtor to file a modified plan and obtain confirmation of it.

We dismissed Lariat's original appeal from the November 18 Order because it is not a final order. Lariat appealed our decision to the Eighth Circuit Court of Appeals, where it remains pending.

The bankruptcy court ultimately confirmed the Debtor's Fourth Modified Plan of Reorganization (Fourth Modified Plan). Following confirmation of the Debtor's Fourth Amended Plan and upon Lariat's motion, the bankruptcy court granted relief from the automatic stay, allowing Lariat to continue the pending fraudulent transfer action against Barbara Wigley.

Lariat filed a new notice of appeal, this time from the November 18, 2015 Order and from the order confirming the Debtor's Fourth Modified Plan. Lariat states that it appeals the order confirming the Fourth Modified Plan to ensure that the November 18 Order denying its motion to dismiss or convert will be reviewed by us.

## STANDARD OF REVIEW

The bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed *de novo*. *Loop Corp. v. U.S. Trustee (In re Loop Corp.)*, 379 F.3d 511, 515 (8th Cir. 2004) (citing *Cedar Shore Resort, Inc. v. Mueller (In re Cedar Shore Resort, Inc.)*, 235 F.3d 375, 379 (8th Cir. 2000)). "Whether a bankruptcy case has been filed in bad faith is a question of fact, and a dismissal will only be reversed if the court abused its broad discretion." *Cedar Shore Resort, Inc.*, 235 F.3d at 379.

## DISCUSSION

The focus of this appeal is the bankruptcy court's denial of Lariat's request to dismiss or convert the Debtor's case to Chapter 7 for bad faith. Bankruptcy Code §1112(b)(1) provides that:

> on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause. . . .

11 U.S.C. § 1112(b)(1). Section 1112(b)(2) sets forth an exception to this rule in the case of unusual circumstances. 11 U.S.C. § 1112(b)(1). Although there is no explicit requirement in § 1112 that a case be filed in good faith, the Eighth Circuit has recognized that "a bad faith filing can be cause for dismissal." *Cedar Shore Resort, Inc.*, 235 F.3d at 379 (citing *First Nat'l Bank of Sioux City v. Kerr* (*In re Kerr)*, 908 F.2d 400, 404 (8th Cir. 1990)) (recognizing a good faith requirement and collecting cases from other circuits with the same requirement). There is no single test for determining whether a Chapter 11 filing was made in bad faith. *Id*. at 379. To determine whether a case has been filed in bad faith, "courts consider the totality of the circumstances, including the court's evaluation of the debtor's financial condition, motives, and the local financial realities." *Id*. (citing *Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1072 (5th Cir. 1986)); *see Kerr*, 908 F.2d at 404 ("We . . . must require a pattern of concealment, evasion, and direct violations of the Code or court order which clearly establishes an improper motive before allowing dismissals for bad faith.") (citation omitted).

Lariat submitted its case only on exhibits admitted into evidence and provided its attorney's narrative summation of those documents. The Debtor's case was based mostly on his testimony. He testified and was examined by Lariat on cross

examination.[5]   After reviewing the evidence, the bankruptcy court credited the Debtor's testimony in finding that the Chapter 11 petition was filed in good faith. The bankruptcy court evaluated the totality of the circumstances, viewing various factors, to determine that cause did not exist for dismissal of the Debtor's case.  We see no error with its determinations that the filing served a valid bankruptcy purpose and was not filed merely to obtain a litigation advantage.   The record supports the bankruptcy court's findings that the Debtor:

> did not file to escape the Lariat judgments; he filed to maximize the value of his assets for the benefit of himself and all of his creditors including Lariat, and to avail himself of the protections of the Bankruptcy Code with respect to limiting Lariat's claim as provided and allowed by the Code and in a bankruptcy case.

On appeal, Lariat focuses on certain factors assessed by the bankruptcy court, claiming that the bankruptcy court's decision was made in error.  Lariat's main argument is that the bankruptcy court erred in finding that the Debtor's Chapter 11 case was filed in good faith because (according to Lariat) the Debtor was not in financial distress.

The bankruptcy court did not err in determining that the Debtor was in financial distress.  It is undisputed that Lariat held a judgment against the Debtor in an amount exceeding $2.2 million.[6]  The Assets Order allowed Lariat to obtain and liquidate all of the Debtor's non-exempt assets.  The court found that the Debtor was not able to satisfy the guarantee judgment without liquidating assets that would lead

---

[5]      The parties stipulated to the admission of all of each party's exhibits except one.  The court admitted all of the exhibits for which the parties stipulated to admission.

[6]      The bankruptcy court found that "[b]ut for the Lariat judgments against the [D]ebtor and his wife, the [D]ebtor would have been a financially healthy debtor."

to his own insolvency and the sharing of the financial distress to other entities. According to the court, the guarantee judgment and Assets Order caused the Debtor to be "teetering on the verge of a fatal financial plummet." It stated that "the majority of the debtors assets . . . are partnership, stock, or other investment or receivable interests in various entities and generally not subject to typical or easily identifiable markets for liquidation purposes." The court credited the Debtor's belief that Lariat would take immediate action to liquidate these assets in a manner that would not maximize the value of the assets, that would be inadequate to satisfy Lariat's guarantee judgment in full, and that would lead to an inability of the Debtor to satisfy other creditors. The court also credited the Debtor's belief that such liquidation would imperil the interest of other entities in which the Debtor had an interest, as well as their creditors, employees, customers and vendors.

Lariat argues that the record does not support the bankruptcy court's determinations. However, the Debtor testified regarding a liquidation analysis that he prepared, stating that in a forced liquidation (90 days) his assets would have a value of approximately $2 million to $2.5 million less than their scheduled value. The Debtor also testified that he believed that Lariat would be unreasonable in its collection efforts and would follow a forced liquidation process that would not preserve the going concern value of his assets. Lariat points to an acknowledgment by the Debtor on cross-examination that a creditor might realize more than the liquidation value of the assets by taking a more patient approach. From this, Lariat concludes that any reasonable creditor (including Lariat) would have solicited expert assistance and obtained market values for the assets. We will not second guess the bankruptcy court's assessment of the evidence and the Debtor as a witness, which was supported by the record. The bankruptcy court credited the Debtor's testimony that he believed that Lariat would effectuate a forced liquidation of his assets. Moreover, Lariat did not offer testimony to state that Lariat would act patiently in collection. In fact, no testimony was offered on Lariat's behalf. We see no error with

the bankruptcy court's weighing of the evidence and its decision to credit the Debtor's testimony.

We also see no error with the bankruptcy court's determination that the Debtor's case did not evidence a two-party dispute. Contrary to suggestions by Lariat, there is no reason why the bankruptcy court should have found that the Debtor's bankruptcy case amounts to a collateral attack on the state court's guarantee judgment, evidencing a two-party dispute. The purposes found by the bankruptcy court for the Debtor's filing were supported by the record. We also see no merit to Lariat's contention that the bankruptcy court erroneously limited two-party disputes to those involving secured creditors. The court's reference to cases involving secured creditors as examples of two-party disputes was not limiting or improper. Lariat disputes the bankruptcy court's finding that, although Lariat was the largest and most significant creditor, it was not the only meaningful creditor. However, it has not adequately explained why this finding is incorrect based on the record. And the creditor body realized meaningful protection by the Debtor's bankruptcy filing in that all creditors are being paid in full with interest or they are not impaired.

Lariat complains that the Debtor filed his Chapter 11 petition to evade the state court judgments. The bankruptcy court did not err in finding a lack of evasive conduct by the Debtor. As the bankruptcy court pointed out, the bankruptcy does not allow the Debtor to evade his state court judgments; it requires him to acknowledge the state court judgments and provide for them in his plan. The Debtor did exactly that. Although we understand Lariat's frustration with the Debtor's conduct in leading it through state courts and other bankruptcy proceedings only to find itself having to defend its interests in this bankruptcy case, the bankruptcy court did not err in finding that the Debtor's Chapter 11 filing did not evidence bad faith.

We see no error with the bankruptcy court's finding that the fraudulent transfer judgment does not support a finding of evasive conduct since the transfers to the Debtor's wife that were the subject of that judgment were made almost three years

pre-petition and that the judgment was entered pre-petition. We also see no evidence of evasiveness by the Debtor's attempt to compromise that judgment through the plan. As the bankruptcy court pointed out, that was an issue for confirmation. In addition, the record supported the bankruptcy court's determination that filing the petition so the Debtor could use § 502(b)(6) to cap Lariat's claim (especially in light of the other facts in this case) reflects nothing other than a proper motive in filing the case. The Debtor testified that capping Lariat's claim was not his only purpose in filing and that he also filed to avoid the harm to himself and his creditors from a forced liquidation by Lariat.

Lariat also sets forth a plethora of other factors that it believes support its position that the Debtor' petition was filed in bad faith. We see no error with the bankruptcy court's decision to not credit any of these factors that were presented to it.

Lariat claims that there exists "striking parallels" between this case and the case of *In re SGL Carbon Corp.,* 200 F.3d 154 (3d Cir. 1999), where the debtor's petition was filed in bad faith. We disagree. The evidence showed that the debtor in *SGL Carbon* was financially healthy and filed solely to address pending anti-trust claims (*i.e.* as a litigation tactic). The *SGL Carbon* debtor's viability might eventually have been threatened by the claims, but, at the time the case was filed, the evidence showed that the debtor faced no immediate financial difficulty. The filing was premature and was not made for a valid bankruptcy purpose. Here, Lariat's judgments had already been entered against the Debtor. As stated, we see no error with the bankruptcy court's findings that the Debtor was in financial distress, and that he filed his Chapter 11 petition to maximize the value of his assets and to obtain the benefits of the Bankruptcy Code. Likewise, we see no parallel to the Eighth Circuit's *Cedar Shore Resort, Inc.* case where the Chapter 11 filing was dismissed as being in bad faith because it was made for the purpose of preventing creditors from pursuing claims in state court, rather than to effectuate a valid bankruptcy purpose. 235 F.3d 375.

**CONCLUSION**

For the reasons stated, the decisions of the bankruptcy court are affirmed.

———————————————