**In re LINCOLN NORTH ASSOCIATES, LIMITED PARTNERSHIP, Debtor.**

**Bankruptcy No. 93–14523–JNF.**

United States Bankruptcy Court, E.D. Massachusetts.

July 6, 1993.

Mark Polebaum, Hale & Dorr, Boston, MA, for debtor.

Michael Gilleran, Shafner & Gilleran, Boston, MA, for Federal Deposit Ins. Co.

## MEMORANDUM ON APPLICATION FOR AUTHORITY TO EMPLOY HALE AND DORR AS COUNSEL TO THE DEBTOR

JOAN N. FEENEY, Judge.

### I. FACTS

The Debtor, Lincoln North Associates Limited Partnership (the "Debtor"), owns all of the beneficial interest in Old Bedford Road Realty Trust (the "Trust"), a Massachusetts nominee realty trust that owns an office building known as Lincoln North (the "Lincoln North property"). The general partners of the Debtor are Lawrence Smith, Richard Nolan, and David Norton (the "Guarantors"). The Debtor filed a voluntary Chapter 11 petition on May 14, 1993, which was executed by Albert Notini, Esq., a partner at Hale and Dorr. Exhibit A to the skeleton petition filed on that day lists fixed, liquidated, unsecured debts of $137,335 owed to thirty creditors, a disputed secured claim in the sum of $22,536,000 owed to the Federal Deposit Insurance Corporation (the "FDIC"), as successor to Bank of New England ("BNE"), secured by a first mortgage on the Lincoln North property, and an undisputed claim of $1,327,000 owed to a second mortgagee.

On the same day that the Debtor filed its petition, it also filed an "Application under 11 U.S.C. § 327 and Rule 2014 of the Federal Rules of Bankruptcy Procedure For Authority to Employ Counsel Under General Retainer" (the "Application"). The Application and the Sworn Statement of Albert Notini filed in support of the Application (the "Notini Statement") stated that Hale and Dorr had received a retainer in the amount of $200,000 for services to be rendered in the case. The Notini Statement further disclosed that Hale and Dorr represented the Trust and the Debtor's general partners in litigation with the FDIC pending in United States District Court for the District of Massachusetts in connection with their guaranties of the loan secured by the first mortgage on the Lincoln North property.

FDIC's predecessor-in-interest, BNE, had commenced litigation against the Trust and the Guarantors in 1990 (collectively, "the Defendants"). On April 3, 1991, United States District Judge Harrington denied BNE's motions for injunctive relief through which it sought possession of the Lincoln North property and permission to collect rents. The court found that the Defendants were not in default of the loan obligations. Two years later, on April 29, 1993, after settlement negotiations proved unsuccessful, the FDIC reactivated the federal court action by filing various motions ("the Motions") seeking possession of the Lincoln North property, turnover of all past collected rents, and attachment by trustee process of the Defendants' funds held by third parties, including funds held in Hale and Dorr's clients' funds accounts. The Motions filed by the FDIC were served

by hand on Hale and Dorr on April 29, 1993. On May 12, 1993, after a hearing on the FDIC's Motions, Judge Harrington rejected the Defendants' contention that a final settlement agreement existed that bound the parties, found the Defendants in default, and granted the relief requested by the FDIC. Thereafter, on May 14, the Debtor filed its Chapter 11 petition.[1]

Because of the disclosure of Hale and Dorr's representation of the Guarantors, this Court scheduled a hearing on the Application. The FDIC filed an objection to the Application asserting that Hale and Dorr held an interest adverse to the estate and that the retainer was cash collateral. At the hearing on the Application held on May 25, 1993, the Court expressed the view that Hale and Dorr was not disinterested because of its representation of the Guarantors. Attorney Polebaum responded that Hale and Dorr would resign from representation of the Guarantors. With respect to the FDIC's objection on cash collateral grounds, Debtor's counsel stated that the retainer was paid to Hale and Dorr sometime in March or early April 1993, prior to Judge Harrington's order of May 12, 1993 granting various relief to the FDIC. Based upon the lack of requisite possession as of the time of the transfer of Debtor's funds, the Court ruled that the FDIC did not have a cash collateral interest in the rents at the time the retainer was paid, which was prior to Judge Harrington's order. Accordingly, the Court overruled the FDIC's objection.

At the conclusion of the May 25, 1993 hearing, Debtor's counsel stated that an Amended Application Authorizing the Employment of Hale and Dorr (the "Amended Application") had been filed, together with the Affidavit of Mark Polebaum (the "Polebaum Affidavit"). In that affidavit, Attorney Polebaum disclosed that Hale and Dorr had been paid a $400,000, rather than

a $200,000 retainer. The Amended Application further sought authority from this Court to apply the retainer to a prepetition bill in the amount of $92,664.59.

In light of this new information, the Court directed Hale and Dorr to serve the Amended Application on all creditors and scheduled a hearing on the Amended Application. The FDIC filed a limited objection to the Amended Application charging that the amount of the retainer was excessive.

The Court conducted a hearing on the Amended Application on June 14, 1993. At that time, the Court requested clarification of the amounts and dates of payments made by the Debtor to Hale and Dorr. Attorney Polebaum responded that the Debtor paid $250,000 to Hale and Dorr on February 16, 1993, $250,000 on March 18, 1993, and $500,000 on April 19, 1993. Thereafter, on April 30, 1993, Hale and Dorr wire transferred $600,000 to the Debtor. In response to the Court's inquiry concerning the reason for the various payments, Attorney Polebaum stated that the Debtor wanted assurance that Hale and Dorr would be available to represent it. The Court also questioned the circumstances of the $92,644.59 bill and ordered an accounting of all bills generated by Hale and Dorr and all payments made by the Debtor to Hale and Dorr during the year preceding the bankruptcy filing.

In response to the Court's order, the Debtor and Hale and Dorr submitted several sworn affidavits with exhibits. The Debtor's general partner, Lawrence Smith, stated in his affidavit that

> After discussions with Hale and Dorr, on February 16, 1993 the Debtor provided Hale and Dorr with a $250,000 retainer for services to be provided related to the Litigation and a potential Chapter 11 case. The $250,000 retainer was placed in a Scudder U.S. Treasury Money Fund account opened by Hale and Dorr in the

1. Under the Court's decision in *In re Eastmare Development Corp.*, 150 B.R. 495 (Bankr.D.Mass. 1993), and other authority in this district cited therein, Massachusetts nominee realty trusts, such as Old Bedford Road Realty Trust, are ineligible for bankruptcy relief. Therefore, the beneficiary of the Trust, Lincoln North Associates, Limited Partnership, obtained protection of the automatic stay by filing the instant Chapter 11 petition. Under *Eastmare*, the Debtor is deemed the beneficial owner of the Lincoln North property, not just the beneficial owner of all the interest in the Trust.

name of the Debtor (the "Scudder Account").

Lawrence Smith also disclosed 1) that the Debtor deposited $250,000 with Hale and Dorr on March 18, 1993 and $500,000 on April 15, 1993 directly into Hale and Dorr's clients' funds account "without the knowledge of Hale and Dorr"; and 2) that Hale and Dorr returned $600,000 to the Debtor on April 30, 1993 after the Debtor had a consultation with Mark Polebaum. Smith's Affidavit also included copies of Hale and Dorr's bills addressed to Richard Nolan and/or David Norton, c/o The Renaissance Strategy Group, Inc., presumably for the Lincoln North federal district court litigation, for the thirteen months prior to commencement of the Chapter 11 case. A summary of the billing history follows:

| Date of Bill | Amount | Date of Payment |
| --- | --- | --- |
| April 16, 1992 | $2,200 | May 26, 1992 |
| July 20, 1992 | $1,400 | August 11, 1992 |
| August 17, 1992 | $4,460 | August 31, 1992 |
| September 25, 1992 | $1,000 | November 9, 1992 |
| November 20, 1992 | $16,873.41 | November 16, 1992 |
| December 21, 1992 | $1,855.93 | February 19, 1993 |
| January 19, 1993 | $1,875 | February 16, 1993 |
| March 23, 1993 | $7,025 | April 1, 1993 |
| April 23, 1993 | $2,900 | May 6, 1993 |

Exhibit A to the Smith Affidavit is a "Memorandum Bill, accounting copy," dated May 14, 1993, that refers to legal services for the period ending May 14, 1993 in the amount of $86,227.50 plus disbursements of $6,437.09. Exhibit A is materially different from the other bills attached to the Smith Affidavit as it does not contain any description of services rendered and is not addressed to the client. It appears to be an internal accounting memorandum for Hale and Dorr's bookkeeping purposes. The Affidavit of Albert Notini, a partner at Hale and Dorr states that on May 14, 1993, he contacted Smith and requested payment of $92,664.59, a request honored by Smith. Attorney Notini then requested that Hale and Dorr's accounting department transfer that amount from its Scudder clients' funds account to its IOLTA account. The check representing this transfer had not been presented for payment at the time of the filing. In the Amended Application, the Debtor seeks authority to complete this transaction.

## II. LEGAL PRINCIPLES

■ The employment of counsel to a Chapter 11 debtor-in-possession must be approved by the Court after appropriate application. *See* 11 U.S.C. §§ 327, 329, 1107; Fed.R.Bankr.P. 2014. Rule 2014(a) requires that an application for an order approving employment must "... be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, or any other party in interest...." A debtor's attorney is subject to the additional disclosure provisions of 11 U.S.C. § 329 which requires counsel to file with the court "... a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation." 11 U.S.C. § 329(a).

■ The purpose of the disclosure requirements is to provide the court with information necessary to determine whether the professional's employment meets the

broad test of being in the best interests of the estate. L. King, 8 *Collier on Bankruptcy*, ¶ 2014 (15th ed. & Supp.1993). Counsel seeking approval of employment must fully disclose all facts concerning fee arrangements made within the year prior to bankruptcy to enable the court to assess the propriety of employment. *In re Martin*, 817 F.2d 175, 182 (1st Cir.1987); *In re Apex Oil Co*, 128 B.R. 671 (Bankr.E.D.Mo. 1991). The burden is on the person seeking employment to come forward and make full, candid, and complete disclosure. *In re B.E.S. Concrete Products, Inc.*, 93 B.R. 228, 237 (Bankr.E.D.Cal.1988). As stated by Judge Haines in *In re Saturley*, 131 B.R. 509 (Bankr.D.Me.1991), debtor's counsel has

> "... an affirmative duty punctiliously to disclose all its connections with the debtor, including fees paid in the year preceding the bankruptcy filing ... [and] ... lay bare *all* its dealings, antecedent and anticipated, regarding compensation for work 'in contemplation of or in connection with' the case. Counsel's fee revelations must be direct and comprehensive. Coy or incomplete disclosures which leave the court to ferret out pertinent information from other sources are not sufficient."

131 B.R. at 516–17 (emphasis in original, citations omitted).

## III. DISCUSSION

In summary, in connection with its request to be employed as counsel to the Debtor, Hale and Dorr has: 1) sworn that it has received a $200,000 retainer; 2) disavowed the first statement and sworn that it received a $400,000 retainer; 3) resigned from representing the Guarantors in the federal district court guaranty litigation to remove an impediment to disinterestedness; 4) transferred $600,000 to the Debtor from its clients' funds account on April 30, 1993, after having been served with a motion for trustee process attachment of Defendants' funds held in the clients' funds account on April 29, 1993; 5) requested satisfaction of a prepetition bill, which appears not to have been tendered to the client in the ordinary course, from funds held in its hands on the petition date; 6) filed the Chapter 11 petition upon receipt of Judge Harrington's order allowing attachment of the Defendants' funds held by Hale and Dorr; and 7) filed an affidavit, on June 30, 1993, referring to a $400,000 retainer and asserting that all of the funds paid by the Debtor to Hale and Dorr as a retainer were property of the Debtor, not property of the Guarantors or the Trust.

This summary of statements and disclosures provided to the Court over a six week period demonstrates that the Court has not been provided with the type of full and complete disclosure of the Debtor's dealings with Hale and Dorr that is required by the Bankruptcy Code, Rules and case law. A review of the record in this case reveals that the variety of statements and affidavits purporting to comprise the requisite disclosure contain inaccuracies and omissions with respect to Hale and Dorr's relationship with the Debtor. The first affidavit in support of employment filed by Attorney Notini stated that the retainer was $200,000. This affidavit was in all respects untrue. The second affidavit of Attorney Polebaum stated that the retainer was $400,000. This affidavit was misleading and incomplete. Based upon the affidavit of the general partner, Smith, it appears that neither attorney's affidavit was accurate and that the retainer that the Debtor agreed to provide Hale and Dorr was $250,-000. However, in Attorney Polebaum's most recent affidavit filed on June 30, 1993, there is a reversion to the $400,000 figure for the retainer. Under these circumstances, the Court does not yet know either what the Debtor and Hale and Dorr intended the retainer to be or what the actual retainer is.

The Court finds that Hale and Dorr has failed to make the full and complete disclosure of the various payments made to it by the Debtor within the year before bankruptcy without inordinate prompting by the Court. The three payments by the Debtor to Hale and Dorr totalling $1,000,000 within three months before bankruptcy and the

subsequent repayment of $600,000 by Hale and Dorr to the Debtor on April 30, 1993, the day after the firm was served with a motion for trustee process attachment against the Defendants in the federal district court litigation, are facts which were not disclosed in either the Application, the Amended Application, or either Affidavit submitted in support of these pleadings. These facts only came to light upon questioning by the Court. The supplemental information submitted by Hale and Dorr raised further questions as does the repayment of $600,000 on April 30, 1993 after Hale and Dorr was served with the FDIC's trustee process attachment motion. Under these circumstances, the Court finds that the standards established by the Bankruptcy Code and Rules, as articulated by Judge Haines, have not been satisfied. *See In re Saturley, supra.* Indeed, the very conduct abjured by the authorities is exemplified by the additional disclosures that have been ferreted out by the United States Trustee, the FDIC and the Court after scrutiny of the case. The Court does not suggest that Hale and Dorr has not attempted to make a clean breast of the history of its transactions with the Trust, the Guarantors, and the Debtor, but the adage "too little, too late" pertains. The Debtor and Hale and Dorr have not satisfactorily met their affirmative duty to punctiliously come forward with full and complete disclosure, particularly since the new disclosures raise as many questions as they answer. *Saturley, supra,* at 516–17. Accordingly, the Amended Application is denied.