**In re Arthur and Joan LARSEN, Debtors.**

**Bankruptcy No. 94–10494.**

United States Bankruptcy Court,
D. Maine.

Jan. 4, 1996.

Burton G. Shiro, Shiro and Shiro, Waterville, ME, for Debtors.

P. Perrino, U.S. Trustee.

## MEMORANDUM OF DECISION

JAMES B. HAINES, Jr., Bankruptcy Judge.

In this Chapter 7 case, Burton Shiro and the firm of Shiro and Shiro (collectively "Shiro" or "Attorney Shiro") seek compensation for pre-conversion services rendered as debtors' Chapter 11 counsel. As was the Chapter 11 case itself, the fee application is shot through with disabling inadequacies. For the reasons set forth below, all compensation will be denied and only $800.00 of $1,165.32 in expense reimbursements sought will be approved. As a consequence, Attorney Shiro must disgorge $8,800.00 previously paid him as a retainer by the debtors.[1]

### Background

■ Arthur and Joan Larsen, conducting business as a proprietorship variety store and gas station in Winslow, Maine, filed a voluntary Chapter 11 petition on October 19, 1994. In due course, they obtained authority to retain Shiro as their counsel.[2]

The debtors first filed a plan and disclosure statement on February 16, 1995.[3] It was met by a hail of objections. At hearings conducted April 6, 1995, I disapproved the disclosure statement, describing it (and the plan accompanying it) as "utterly inadequate," ordered the debtors to file an amended plan and disclosure statement within twenty days and, at the behest of the U.S. Trustee, ordered them to appear and show cause why the case should not be converted to Chapter 7 or why a trustee should not be appointed.[4]

The debtors' second stab fared no better. The amended plan and disclosure statement were summarily disapproved. I ordered that a trustee be appointed, expecting that the discipline and order necessary to provide the reorganization a chance of success would be imposed.[5] Alas, notwithstanding repeated assurances from the Larsens and Attorney Shiro that prospects were promising, the reorganization collapsed for lack of resources to pay necessary administrative expenses. As a consequence, the case converted to Chapter 7 on July 7, 1995.[6]

### Discussion

#### A. What Counsel Got.

After post-conversion inquiry, the Chapter 7 trustee has ascertained the full amount of fees paid Shiro in the pre- and postfiling period for services rendered "in contemplation of or in connection with" the bankruptcy case. See § 329. Those amounts and the dates the debtors paid them, conceded by Shiro to be accurate, are as follows:

| Check Date | Amount |
|---|---|
| 7/18/94 | $2,500.00 |
| 10/10/94 | 1,500.00 |
| ** Petition Filed ** | |
| 10/30/94 | 2,750.00 |
| 11/19/94 | 1,000.00 |
| ** Employment Application Filed ** | |
| 1/20/95 | 750.00 |
| 4/14/95 | 1,100.00 |
| **TOTAL** | **$9,600.00** |

■ Attorney Shiro does not contend that the sums the Larsens paid him are anything other than a "security retainer." See Indian

1. There are no facts in dispute. This memorandum sets forth conclusions of law in accordance with Fed.R.Bankr.P. 7052 and Fed.R.Civ.P. 52.

Unless expressly indicated otherwise, references to statutory sections are to sections of the Bankruptcy Reform Act of 1978 (the "Code" or "Bankruptcy Code"), as amended, 11 U.S.C. § 101, et seq. This case was filed prior to the effective date of the 1994 Code amendments.

2. Order dated December 9, 1994, Court Doc. No. 13. The application to employ counsel was tardy, see Me.Bankr.R. 2014(c)(1) (providing that approval of Chapter 11 debtors' counsel's employment will be effective as of the filing date if the application for employment is filed within 30 days of the petition), necessitating nunc pro tunc, or post facto, approval, an accommodation no longer available under the law of this circuit, absent extraordinary circumstances. In re Jarvis, 53 F.3d 416, 421 (1st Cir.1995).

3. Court Doc. Nos. 32, 33.

4. Order dated April 10, 1995, Court Doc. No. 46.

5. Orders dated May 5, 1995, Court Doc. Nos. 52, 53.

6. Court Order dated July 7, 1995, Court Doc. No. 62.

*Motocycle Assoc. III Ltd. v. Massachusetts Hous. Fin. Agency,* 66 F.3d 1246, 1255 (1st Cir.1995); *In re Saturley,* 131 B.R. 509, 515 & n. 28 (Bankr.D.Me.1991). The estate retains an interest in the fund. *In re Saturley,* 131 B.R. at 515.

### B. Deficiencies in Disclosure: What Counsel Didn't Say.

At the outset of a bankruptcy case, debtor's counsel is required to file the "statement required by § 329 of the Code." Fed. R.Bankr.P. 2016(b) (requiring that the statement be filed within 15 days of the order for relief and supplemented thereafter within 15 days of any subsequent payment or agreement not previously disclosed). *See also* Me. Bankr.R. 2016(b) (setting forth service requirements for statement).[7] Shiro never filed a Rule 2016(b) statement in this case.

To make matters worse, Attorney Shiro's representations in the debtors' application to employ him, ostensibly complying with Fed. R.Bankr.P. 2014, inaccurately described payments he'd received from the Larsens. Attorney Shiro represented only that he had agreed to a $5,000.00 retainer, $4,000.00 of which had been paid.[8] Although those figures were correct as of the filing date, they ignored substantial sums Shiro received in the weeks between the petition's filing and the employment application's submission.[9]

Shiro's application for compensation, filed after the case converted to Chapter 7, continued the pattern of inaccurate disclosure. It made no reference whatsoever to what the Larsens had already paid him, completely ignoring federal and local rules governing fee applications. *See* Fed.R.Bankr.P. 2016(a) (requiring disclosure of "what payments have theretofore been made or promised to the applicant for services rendered or to be rendered in any capacity whatsoever in connection with the case."); *see also* Me.Bankr.R. 2016(a)(3)(ii) (application shall disclose "total compensation and reimbursement received by the applicant to date.")

Indeed, only through the Chapter 7 trustee's investigation and objection to Attorney Shiro's fee application did the amount and timing of the payments Shiro received from the debtors come to light.

### C. Deficiencies in the Application.

*Vague Task Descriptions.* Even after supplementation at the court's invitation,[10] Shiro's application provides no meaningful description of the tasks he performed or the time he spent for each task as required by Me.Bankr.R. 2016(a)(3)(I).[11] In the end, At-

---

**7.** The statement must set forth:

> compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

11 U.S.C. § 329.

**8.** The application made no mention whether, or how, the balance would be paid.

**9.** *See supra* n. 2 regarding the timing of the application to employ. By the time the employment application was filed, Shiro had been paid $7,750.00 (not $4,000.00) by the debtors.

**10.** Following the initial fee application hearing, I ordered Shiro to "submit supplemental materials to his application with sufficient time records, narratives and other details" to permit a full evaluation of services he performed in contemplation of and in connection with the case. Order dated November 16, 1995, Court Doc. No. 109.

**11.** One of many examples is provided by the time entry for October 17, 1994. It indicates that Attorney Shiro spent 180 minutes on the following task: "Letter to U.S. Bankruptcy Court with Voluntary Petition and Certification of Creditor Matrix and Mailing Matrix with check # 74324 of ($800.00) for filing fee and cc: to clients." Fee Application of Burton G. Shiro, Court Doc. No. 91. Attorney Shiro's supplemental materials provide little further insight into what he actually did. It states:

> Final adjustments to the Chap. 11 petition of Mr. & Mrs. Larsen were made and on October 17, 1994, the petition was filed with the U.S. Bankruptcy Court, together with the filing fee. The item 10/17/94, in the undersigned's application did not fully explain that the time of 120 [sic] min. included additional preparation, study, and adjustment, not simply a letter with enclosures.

Supplemental Explanation of Application and [sic] Allowance of Compensation ("Supplement to Fee Application"), Court Doc. No. 112. In fact, by stating without explanation that the time expended on October 17 was 120, rather than 180 minutes, the supplement raised more questions than it answered.

torney Shiro apparently despaired at explaining exactly what he had done and how much time he spent doing it. His supplement closes with a *mea culpa* and a plea for mercy.[12]

*Lumping.* Numerous block time entries are accompanied by the briefest of task descriptions, indicating that time has been "lumped," rather than parsed on a task-by-task basis, throughout the application.[13]

*Unexplained and Improper Expenses.* Only one expense listed in the application, the Chapter 11 filing fee in the amount of $800.00, is plainly proper.[14] Beyond that, however, Attorney Shiro seeks reimbursement, without explanation, for $68.50 in Federal Express charges, $40.32 in certified mail charges, and a $250.00 payment to an attorney named "Mitchell." [15]

*Inappropriate Billing.* The fee application's deficiencies go far beyond form, disclosure and style. To the extent that the vague task descriptions provide an understanding of what Attorney Shiro did, it reveals that, billing at $125.00 per hour, he performed a multitude of tasks that should, and could, have been performed by a junior attorney, paralegal assistant or, in some instances, clerical staff.[16]

Moreover, the time entries for many of the tasks arguably appropriately performed by a lead Chapter 11 attorney in a case such as this are heavy-handed.[17] And some entries are for tasks that, had counsel been attentive to the case, would have never been necessary.[18] In other words, the application evidences an absence of "billing judgment" throughout, resulting in far too high a bill for counsel's efforts in this case's brief and undistinguished Chapter 11 phase.

The foregoing is not an isolated example. Throughout the itemization accompanying the fee application, task descriptions are cryptic and incomplete, *e.g.,* "7/29/94—telephone calls to clients and letter—15 minutes"; "8/1/94—rec'd/reviewed papers from clients—20 minutes"; "10/31/94—Letter to U.S. Bankruptcy Court with Certification of Service re: Notice of Commencement of Case Under Chapter 11 of the Bankruptcy Code, Meeting of Creditors and Fixing of Dates dated Oct. 28,94 [sic] and Proof of Claims forms—60 minutes."

12. In retrospect, the undersigned can understand how misleading some of the itemizations may be, such as one and two hours regarding a letter, with enclosures, in that such items should have been more fully stated or described to reflect the time for study, discussion, research, and preparation and as the respective times were so intended.

However, without desiring to be redundant, the undersigned sincerely and respectfully submits that the undersigned's Application for Allowance, and the itemizations listed, therein, are a reasonable, fair, and proper statement of the time and services performed by the undersigned in regards to the Chapter 11 proceeding of Mr. & Mrs. Larsen.
Supplement to Fee Application, Court Doc. No. 112.

13. *See, e.g.,* time entries for 10/17/94 (180 minutes); 10/27/94 (120 minutes); 10/31/94 (120 minutes); 11/15/94 (225 minutes); 11/17/94 (180 minutes); 12/1/94 (120 minutes); 12/30/94 (120 minutes); 1/5/95 (60 minutes); 1/24/95 (60 minutes); 2/1/95 (120 minutes); 2/14/95 (120 minutes); 2/17/95 (120 minutes) and 3/8/95 (60 minutes). These are but the greater examples. Lesser ones litter the itemization landscape.

14. Of course, as explained above, we do not have the benefit of a Rule 2016(b) statement, which would have revealed at the outset of the case whether the debtors supplied funds for the filing fee and the relation of those funds to the retainer.

15. A Karen J.M. Mitchell, Esq., was associated with the Shiro firm during the Chapter 11 proceedings. Her time entries appear in the body of the fee application. Some work was apparently done by Attorney James Mitchell, who is not associated with the Shiro firm. It appears that Attorney Shiro "contracted out" a court appearance through James Mitchell and that he now seeks reimbursement for the "expense" of doing so.

16. *See, e.g.,* time entries for 8/10/94 (initial drafting of petition and schedules); 8/18/94 (drafting schedules); 10/31/94 (preparing certificate of service); 11/17/94 (listing creditors and balances); 1/11/95 (operating facsimile transmission machine).

17. *See, e.g.,* time entries for 10/27/94 (draft answer to complaint—120 minutes); 11/17/94 (file review, client conference, list of claims—180 minutes); 11/30/94 (draft response to relief from stay motion—60 minutes); 11/30/94 (review of order granting relief from stay—20 minutes).

18. *See, e.g.,* time entries for 12/15/94 (scheduling and filing motion for relief from order granting relief from stay—20 minutes).

### D. Assessing Counsel's Entitlement to Compensation.

#### 1. Consequences of Non–Disclosure.

■ Attorney Shiro's failure to file a Rule 2016(b) statement, his inaccurate report of retainer payouts received as of the date of the employment application and his failure to disclose fees received as of the date of his fee application are major disclosure defaults.

This court has previously observed that full disclosure of counsel's fee arrangements with the debtor is "essential to effective exercise of the court's power to pass on fee applications." *In re Saturley,* 131 B.R. at 516 (collecting authorities); *see In re Martin,* 817 F.2d 175, 183 (1st Cir.1987).

> Counsel's fee revelations must be direct and comprehensive. Coy or incomplete disclosures which leave the court to ferret out pertinent information from other sources are not sufficient. . . .
>
> Anything less than the full measure of disclosure leaves counsel at risk that *all compensation may be denied.* . . . The court may exercise its discretion to deny or reduce fees for counsel's failure to disclose its fee arrangements whether or not actual harm accrues to the estate. . . . Because it fosters the potential to frustrate meaningful inquiry by the court and others, failure to file the Rule 2016 statement can be, in and of itself, grounds for denying counsel any compensation. . . . Whatever the explanation for disclosure inadequacies, it reflects poorly on responsible counsel . . . and the resulting potential for frustration of the Code's policy of thorough scrutiny is unacceptable.

*In re Saturley,* 131 B.R. at 517 (citations omitted) (emphasis supplied); *see also Cohn v. U.S. Trustee (In re Ostas),* 158 B.R. 312, 321 (N.D.N.Y.1993); *In re Quality Respiratory Care, Inc.,* 157 B.R. 180 (Bankr.D.Me. 1993); *In re Lincoln North Assoc.,* 155 B.R. 804, 807–08 (Bankr.D.Mass.1993); 8 Collier on Bankruptcy ¶ 2016.04[2] (Lawrence P. King, ed., 15th ed. 1995).

#### 2. Accepting Unauthorized Payments.

■ Shiro's disclosure defaults occurred in tandem with a significant aggravating circumstance: during the course of the Chapter 11 proceeding, without authority, he took payments for legal services from the debtors.[19] Such conduct, placing counsel's self-interest above the estate's in derogation of requirements set by the Code and rules, provides an independently sufficient basis to deny all compensation. *Anderson v. Anderson (In re Anderson),* 936 F.2d 199, 204 (5th Cir.1991); *In re Saturley,* 131 B.R. at 517; *see In re Futuronics Corp.,* 655 F.2d 463 (2d Cir.1981), *cert. denied,* 455 U.S. 941, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982); *In re Arlan's Dep't Stores, Inc.,* 615 F.2d 925 (2d Cir.1979); *see generally In re Cuisine Magazine, Inc.,* 61 B.R. 210 (Bankr.S.D.N.Y.1986) (strict disclosure requirements provide the court with the opportunity to examine the integrity of the professionals involved and to give interested parties an opportunity to object).

Worse yet, I cannot conclude that Shiro's conduct was without consequence to the reorganization process. After all, in this "mom and pop" Chapter 11 context, the funds he siphoned off for himself were not insignificant. In the end, the case converted because the Larsens were without the cash necessary to pay reorganization's essential administrative freight.

#### 3. Beyond Nondisclosure and Self–Interest.

I could choose not to disallow all compensation for the foregoing infractions and exercise discretion to assess the merits of counsel's application in an effort to discern whether some compensation should be paid to Attorney Shiro for services beneficial to the estate. *See, e.g., In re Saturley,* 131 B.R. at 517 (citing cases). But Shiro's fee application's inadequacies would frustrate the task. The lumping of tasks and time entries "renders it 'impossible to review the reasonableness of time devoted to a particular task.'" *In re Kalian,* 178 B.R. 308, 318

---

**19.** Shiro never volunteered information about those payments. They remained secret until, after conversion, the Chapter 7 trustee uncovered them and disclosed them in his objection to the fee application.

(Bankr.D.R.I.1995) (quoting *In re Swansea Consol. Resources, Inc.*, 155 B.R. 28, 32–33 (Bankr.D.R.I.1993). And, as discussed above, where the application's itemization is decipherable, analysis discloses improper and unreasonable charges, as well as time devoted to tasks that were unnecessary or counterproductive.[20] *See In re Kalian*, 178 B.R. at 319 (addressing billing judgment).

■■■ Attorney Shiro's expense reimbursement request would fare no better. Charges for express mail and certified mail will not be reimbursed in the absence of an explanation of their purpose and need. *In re Kalian*, 178 B.R. at 320. *See* Me.Bankr.R. 2016(a)(5)(ii). The request that $250.00 paid to an attorney not associated with Attorney Shiro's firm be treated as a reimbursable expense must be refused, as well. Not only is the "expense" listed without explanation, but it represents an impermissible, undisclosed "sharing of compensation" in violation of the rules. *See* Fed.R.Bankr.P. 2016(a).

One thing is readily apparent. This case belonged in bankruptcy court. Because Attorney Shiro paid the $800.00 filing from funds advanced him by the debtors, my action on the fee application should take that payment into account.

*E.  Summing Up.*

■■■ Most certainly, debtor's counsel need not be successful in every case to warrant administrative compensation from the estate. *See In re DN Assoc.*, 3 F.3d 512, 516 (1st Cir.1993); *In re Casco Bay Lines, Inc.*, 25 B.R. 747, 755 (1st Cir. BAP 1992) (substituting the "success" test applied in non-bankruptcy lodestar settings with a "benefit to the estate" test); *In re Blackwood Assoc., L.P.*, 165 B.R. 108 (Bankr.E.D.N.Y.1994); *see also In re Vines, Inc.*, 159 B.R. 381 (Bankr. D.Mass.1993). But counsel's efforts must

contribute constructively to the reorganization's prospects. *In re DN Assoc.*, 3 F.3d at 516; *In re James Contracting Group, Inc.*, 120 B.R. 868, 872 (Bankr.N.D.Ohio 1990).

I conclude that all compensation sought by Attorney Shiro should be disallowed and that, save the filing fee of $800.00, all expenses for which he seeks reimbursement should be disapproved. My conclusion rests upon Attorney Shiro's consistent, seemingly studied, disregard for the rules governing disclosures regarding compensation for Chapter 11 debtor's counsel and the thoroughgoing inadequacy of his application. Surveying the course of the Chapter 11 case during Attorney Shiro's term as counsel for the debtors, the result is further justified by my conclusion that counsel's efforts resulted in no discernible benefit to the estate.[21]

### Conclusion

For the reasons set forth above, all compensation sought by Attorney Shiro for services rendered to the Chapter 11 debtors is disallowed, and only $800.00 of expense reimbursements sought is approved. Attorney Shiro is ordered to disgorge to the Chapter 7 trustee the sum of $8,800.00, representing retainers previously paid him by the debtors.

---

**20.** The Larsens' short travel in Chapter 11 was fraught with unproductive contention, most all of it spawned by inattention and uncooperativeness of the debtors and their counsel. Here are just several examples: The debtors neglected to initiate negotiations for cash collateral authority at the threshold, leading to Key Bank of Maine's motion to prohibit its unauthorized use. *See* Court Doc. No. 6. The debtors groundlessly refused to permit secured creditor C.N. Brown Co. to have its collateral appraised, resulting in an

other unnecessary, and unnecessarily contested, motion. *See* Court Doc. Nos. 35, 36. The debtors scheduled an indefensible exemption claim in their business premises and withdrew it without contest when a creditor called their bluff. *See* Debtor's Schedule C, and C.N. Brown Co.'s Objection to Exemption, Court Doc. No. 21.

**21.** *See supra* n. 20.