In re FEDERAL ROOFING
CO., INC., Debtor.

Bankruptcy No. 95–41115.

United States Bankruptcy Court,
N.D. Alabama,
Eastern Division.

Dec. 17, 1996.

Charles Martin, Gadsden, AL, for debtor-in-possession.

Stephen Porterfield, Birmingham, AL, for General Motors Acceptance Corporation.

Marvin Franklin, Birmingham, AL, for Hinkle Metals and Supply Co., Inc.

Robert Landry, for Bankruptcy Administrator.

## MEMORANDUM OPINION AND ORDER

JAMES S. SLEDGE, Bankruptcy Judge.

This case came before the Court on November 14, 1996, for a hearing on the Bankruptcy Administrator's motion to dismiss or convert the case pursuant to 11 U.S.C. § 1112(b). This Court has jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). The Court must determine whether the case should be dismissed or converted to one under Chapter 7 and if, and to what extent, sanctions should be imposed for the conduct of the debtor-in-possession, attorney acting on behalf of the debtor-in-possession, and the accountants acting on behalf of the debtor-in-possession.

Appearing at the hearing were Charles Martin, Esq., attorney appearing on behalf of the debtor-in-possession, Robert Landry, Esq., for the Bankruptcy Administrator, Stephen Porterfield, Esq., for General Motors Acceptance Corporation (GMAC), and Marvin Franklin, Esq., for Hinkle Metals and Supply Co., Inc. No testimony was offered. Ten (10) exhibits, consisting of operating reports filed by the debtor-in-possession, were admitted into evidence without objection. At the hearing, the Bankruptcy Administrator, GMAC, and the debtor-in-possession advocated dismissal. Hinkle Metals and Supply Co., Inc., an unsecured creditor, advocated conversion. For the reasons discussed below, the Court orders that the case be converted to Chapter 7.

### FINDINGS OF FACT

Federal Roofing Co., Inc., (hereinafter referred to as "debtor-in-possession") filed its Chapter 11 bankruptcy petition on May 8, 1995. An Operating Order was entered on that same date ordering the debtor-in-possession to file monthly and quarterly operating reports and a report regarding the status of the disclosure statement and plan if the disclosure statement and plan has not been filed within 120 days after the filing of the petition.[1]

---

1. The Chapter 11 Operating Order is routinely entered in every Chapter 11 case. The order enables the Court and Bankruptcy Administrator to manage and supervise Chapter 11 cases.

The debtor-in-possession has filed two reports to the Court regarding the status of the disclosure statement and plan. The last report was filed on or about April 25, 1996, more than six (6) months ago, stating that the debtor-in-possession expected to file a plan and disclosure statement within ninety (90) days. No such plan and disclosure statement was filed within the time specified in the report. Indeed, no plan or disclosure statement has ever been filed.

The debtor-in-possession also engaged in a number of unauthorized transactions. According to the operating reports filed in the case, the debtor-in-possession has participated in a large number of transactions that involve receiving and disbursing funds to "J. Crain" or "Jenny Crain". Ms. Crain is the daughter of the principal and chief executive officer. Ms. Crain is an insider as that term is defined in 11 U.S.C. 101(31)(B)(vi).[2] These payments and receipts include:

| | | |
|---|---|---|
| February, 1996 | Paid to debtor-in-possession from J. Crain | $82,034.25. |
| March, 1996 | Paid to debtor-in-possession from J. Crain | $48,896.55. |
| April, 1996 | Paid to debtor-in-possession from J. Crain | $47,946.60. |
| April, 1996 | Paid to J. Crain from debtor-in-possession | $64,755.74. |
| May, 1996 | Paid to debtor-in-possession from J. Crain | $46,533.69. |
| May, 1996 | Paid to J. Crain from debtor-in-possession | $45,823.92. |
| June, 1996 | Paid from J. Crain to debtor-in-possession | $58,389.70. |
| June, 1996 | Paid to J. Crain from debtor-in-possession | $55,765.24. |
| July, 1996 | Paid to debtor-in-possession from J. Crain | $53,373.60. |
| July, 1996 | Paid to J. Crain from debtor-in-possession | $40,449.70. |
| August, 1996 | Paid to debtor-in-possession from J. Crain | $71,727.00. |
| August, 1996 | Paid to J. Crain from debtor-in-possession | $91,747.56. |

It appears to the Court that the debtor-in-possession was involved in some financing arrangement with the insider wherein large amounts of funds were transferred between the debtor-in-possession and the insider. The debtor-in-possession described the transactions as simply "post-petition financing". No court approval for post-petition financing was ever sought or granted and no order was ever issued approving the transfers. In addition, no notice to creditors was ever provided wherein they might object to this "financing". No evidence was presented that this "financing" was in the ordinary course of business for the debtor-in-possession. At the hearing, counsel for the debtor-in-possession suggested that these were "paper transfers" with few funds actually changing hands. No credible explanation has been given.

In addition to the above unauthorized uses of estate funds, a review of the case file reveals several inadequacies in regard to the employment of professionals. The debtor-in-possession did not file an application to employ counsel. Consequently, there is no order approving debtor-in-possession's employment of counsel. The debtor-in-possession did not file an application to employ accountants. Consequently, there is no order approving the debtor-in-possession's employment of accountants.[3] Even though there was no order approving the employment of professionals, the operating reports reveal that the debtor-in-possession employed these professionals anyway.

The operating reports also reveal several inappropriate uses of estate funds in regard to professional fees. The debtor-in-possession did not file an application to compensate professionals. The Court has not issued an order approving any compensation to be paid to either counsel or accountants. Despite no Court authorization, the debtor-in-possession has compensated professionals in this case

---

**2.** Section 101(31)(B)(vi) provides:
"insider" includes—(B) if the debtor is a corporation—(vi) relative of a general partner, director, officer, or person in control of the debtor.

**3.** Not only did the Court not approve employment, the Court is not even aware of the identity of the accountant.

several times since the filing of the petition. According to the operating reports, which were admitted into evidence without objection, the debtor-in-possession made several payments to accountants. These payments include:

| | |
|---|---|
| August, 1995 | Paid $40.00. |
| October, 1995 | Paid $195.00. |
| January, 1996 | Paid $45.00. |
| March, 1996 | Paid $600.00. |
| May, 1996 | Paid $624.00. |

These payments total $1,504.00. No application was made seeking approval of payment and no order was issued approving these payments. Likewise, according to the operating reports, the debtor-in-possession also made several legal payments.[4] These payments include:

| | |
|---|---|
| August, 1995 | Paid $208.50. |
| January, 1996 | Paid $2,500.00. |
| February, 1996 | Paid $2,500.00. |
| March, 1996 | Paid $2,500.00. |

These payments total $7,708.50. The total amount of professional fees paid post petition equals approximately $9,212.50.[5]

## CONCLUSIONS OF LAW

The issue confronting the Court is whether this case should be dismissed or converted and whether any sanction should be imposed for the payment of unauthorized professional fees. Before the Court need addresses the fees issue, it must first determine whether the case should be dismissed or converted.

### I. Dismissal or conversion.

Section 1112 governs the dismissal or conversion of a case in Chapter 11. Subsection (b) of that section governs dismissal upon request of a party in interest. That section provides in part:

(b) Except as provided in subsection (c) of this section, on request of a party in interest or the United States trustee or bankruptcy administrator, and after notice and a hearing, the court may convert a case under this Chapter to a case under Chapter 7 of this title or may dismiss a case

under this Chapter, whichever is in the best interest of creditors and the estate, for cause, including—

(1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;

(2) inability to effectuate a plan;

(3) unreasonable delay by the debtor that is prejudicial to creditors;

 These are only some of the grounds set out in the Code. Proof of any one of the factors listed under § 1112(b) is sufficient to warrant and justify conversion. *In re Route 202 Corporation,* 37 B.R. 367 (Bankr.E.D.Pa. 1984). The Court is not limited to the specific grounds set out in the section. Section 1112(b) of the Code permits a bankruptcy court to convert or dismiss a case for "cause". The section provides ten enumerated examples which constitute statutory cause, but the list is not exhaustive. *In the Matter of Berryhill,* 127 B.R. 427, 430 (Bankr.N.D.Ind.1991). Courts have wide latitude in determining whether cause exists to convert or dismiss. *In the Matter of Koerner,* 800 F.2d 1358 (5th Cir.1986). Cause may be determined from the facts and circumstances of the case. *First National Bank of Sioux City v. Kerr (In re Kerr),* 908 F.2d 400, 404 (8th Cir.1990). The pertinent legislative history states, "The court will be able to consider other factors as they arise, and use its equitable powers to reach an appropriate result in individual cases." H.R.Rep. No. 595, 95 Cong., 1st Sess. 406 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6362. Accordingly, the determination of cause under § 1112(b) is "subject to judicial discretion under the circumstances of each case." *In the Matter of Nancant, Inc.,* 8 B.R. 1005, 1006 (Bankr.D.Mass.1981).

 From the evidence presented, the Court determines that cause exists on several grounds for conversion or dismissal. First, this case has been pending for 18 months.[6] Since the filing of the petition, the debtor-in-possession has yet to submit a dis-

---

**4.** These legal payments may have gone to legal professionals other than counsel that was acting without authority in the bankruptcy case.

**5.** This figure represents professional fees paid since the filing of the case and reported in the operating reports.

**6.** The case was filed on May 8, 1995.

closure statement and plan for approval. The debtor-in-possession has filed several reports to the Court regarding the status of the disclosure statement and plan. The last report was filed on or about April 25, 1996 stating that the debtor-in-possession expected to file a plan and disclosure statement within ninety (90) days. The debtor-in-possession did not comply with this report as no plan and disclosure statement was filed within the time specified in the report.[7] The debtor-in-possession's failure to file a plan over long periods of time "can be evidence of no prospect for reorganization and an inability to effectuate a plan under 11 U.S.C. § 1112(b)(1), and (2) ..." *In re Powell Brothers Ice Company,* 37 B.R. 104, 106 (Bankr.D.Kan.1984). *See In re Tornheim,* 181 B.R. 161 (Bankr.S.D.N.Y.1995) (failure to file a plan after 16 months warranted dismissal); *Hall v. Vance,* 887 F.2d 1041 (10th Cir.1989) (failure to file plan within 8 months); *In re Koerner,* 800 F.2d 1358 (5th Cir.1986) (failure to file plan and disclosure statement within 16 months). There are cases that gave as little as five months for the debtor-in-possession to file a plan before the bankruptcy court ordered the case converted to Chapter 7. *In re Photo Promotion Associates, Inc.,* 47 B.R. 454 (S.D.N.Y.1985).

■ The Court does not adhere to a hard and fast rule requiring a plan and disclosure statement by a set period of time but instead believes the length of time necessary to file a plan and disclosure statement should be determined on a case by case basis. In this case, the case has been pending for 18 months. This case does not appear to be overly complex requiring an extraordinary amount of time to develop and propose a plan. Nothing was presented to the Court that would explain or justify the amount of time that has transpired without a plan or disclosure statement. The Court determines that this lengthy amount of time evidences no prospect for rehabilitation and the debtor-in-possession's inability to effectuate a plan. Dismissal or conversion is warranted on this ground alone.

■ Secondly, the debtor-in-possession's practice of maintaining an on going financial transaction with an insider constitutes a breach of the debtor-in-possession's fiduciary duty to the estate. 11 U.S.C. § 364(b)[8] governs obtaining credit not in the ordinary course of business.[9] That section expressly requires notice and a hearing. The debtor-in-possession did not notify anyone of this practice of getting payments from the insider or of repaying same. The Court certainly never approved the practice. These unapproved transactions represent a disregard for proper Chapter 11 case administration.

■ The transactions involved here represent a misuse of estate funds and breached the fiduciary duty owed by the debtor-in-possession to the estate and its creditors. *In Matter of NuGelt, Inc.,* 142 B.R. 661 (Bankr. D.Del.1992). In the *NuGelt* case, the debtor-in-possession also conducted unauthorized financial transactions. The court held:

> [The creditor and the trustee] argue that these so-called operating expenditures are a misuse of estate funds which is both a breach of the debtor-in-possession's fiduciary duties to the estate and its creditors, and beyond the power of this court to approve. The court finds section 1112(b) cause based on misuse of estate funds and other breaches of the debtor-in-possession's fiduciary duty to the estate and its creditors.

> The debtor-in-possession is a fiduciary to the estate and its creditors. "[I]f a debtor remains in possession—that is, if a trustee is not appointed—the debtor's directors bear essentially the same fiduciary obligation to creditors and shareholders as would the trustee for a debtor out of possession. Indeed, the willingness of courts

---

7. As of the date of the hearing, November 13, 1996, no plan or disclosure statement has been filed.

8. 11 U.S.C. § 364(b) provides:
 The court, after notice and a hearing, may authorize the trustee to obtain unsecured credit or to incur unsecured debt other than under subsection (a) of this section, allowable under section 503(b)(1) of this title as an administrative expense.

9. The debtor-in-possession presented no evidence that these credit transactions were in the ordinary course of business.

to leave debtors in possession 'is premised upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of a trustee.' " *Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343, 355, 105 S.Ct. 1986, 1994, 85 L.Ed.2d 372 (1985) (citing *Wolf v. Weinstein,* 372 U.S. 633, 649–52 & 651, 83 S.Ct. 969, 979–808, 980, 10 L.Ed.2d 33 (1963)). Failure to comply with these obligations may be cause for dismissal. *In re Wells,* 71 B.R. 554, 557 (Bankr.N.D.Ohio 1987).

The hallmark of a trustee is accountability and segregation of funds. These rules are reflected in the requirements (for example) that the debtor-in-possession open a separate debtor-in-possession account, file monthly debtor-in-possession statements with the United States Trustee and obtain court approval for transactions out of the ordinary course.

*Id.* at 666. The Court is in agreement with the holding in *NuGelt.* A Chapter 11 debtor as debtor in possession has certain fiduciary duties, a dereliction of which could subject the case to dismissal or conversion. *In re Wells,* 71 B.R. 554, 557 (Bankr.N.D.Ohio 1987) (transferring property of the estate in a manner not consistent with the Bankruptcy Code or an order of the court may subject the case to dismissal or conversion).

■ A third ground exists for dismissal or conversion. The debtor-in-possession's practice in regard to the hiring of professionals also warrants dismissal or conversion. Section 327(a) requires court approval before a professional may be employed.[10] This section is applicable to debtors-in-possession. 11 U.S.C. § 1107(a).[11] In order to satisfy § 327, the debtor-in-possession must file an application with the court pursuant to Rule 2014(a). Rule 2014 also requires a "verified statement ... setting forth the person's connections" to the debtor, creditors, and other parties in interest.[12] As above, the debtor-in-possession disregarded this practice in proper Chapter 11 administration. There was no application filed before the debtor-in-possession employed an attorney or accountants. The Court was not given the opportunity to perform its critical functions in regard to the employment of professionals.[13] The debtor-in-possession's disregard of the proper procedure in the employment of professionals constitutes cause warranting dismissal or conversion.

■ Dismissal or conversion is also warranted for the debtor-in-possession's pay-

---

**10.** 11 U.S.C. § 327(a) provides:

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

**11.** 11 U.S.C. § 1107(a) provides:

(a) Subject to any limitations on a trustee serving in a case under this Chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all of the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this Chapter.

**12.** Fed.R.Bankr.P. 2014(a). The rule provides in full:

An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to § 327, § 1103, or § 1114 of the Code shall be made only on appli-

cation of the trustee or committee. The application shall be filed and, unless the case is a Chapter 9 municipality case, a copy of the application shall be transmitted by the applicant to the United States trustee. The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

**13.** The Court, among other things, must insure that the professionals to be employed do not have a conflict of interest and are disinterested as that term is defined under 11 U.S.C. § 101(14).

ment of legal and accountant fees post-petition without court approval. From the facts stated above, the debtor paid its unauthorized attorney $7,708.50 and its unauthorized accountant $1,504.00. Section 330(a) provides the substantive basis for the attorney of the debtor-in-possession to receive compensation. The section sets out the factors for the court to consider in awarding fees while Rule 2016 sets out the procedural mechanism which the attorney must follow to receive compensation. Rule 2016 requires a detailed statement of services performed, time expended, and the expenses incurred, and request a specific amount to be paid. In addition, the application must include all payments already received or promised and the source of those payments. Agreements relating to sharing of compensation must also be disclosed in the fee application.[14] Again, the debtor-in-possession did not comply with the Code and Rules in regard to the fee payments. Neither the attorney nor the accountant filed an application to be compensated. The Court and creditors were not given the opportunity to review the fees paid or to determine if such fees were reasonable and compensable. This failure to seek court approval for payments to professionals represents cause for dismissal or conversion. *In re 3868–70 White Plains Rd., Inc.,* 28 B.R. 515 (Bankr.S.D.N.Y.1983).

As stated above, the debtor-in-possession's failure to file a plan and disclosure statement and its utter disregard of its fiduciary responsibilities and the mandates of the Bankruptcy Code and Rules constitute cause warranting dismissal or conversion. The Bankruptcy Administrator and the debtor-in-possession advocated dismissal while the only unsecured creditor at the hearing advocated conversion. The Court is in agreement with the unsecured creditor. The Court believes that it would be in the creditor's and the estate's best interest to convert this case to one under Chapter 7. Such conversion will result in a trustee being appointed who will be able to go into this case and determine what may be recovered for the benefit of the estate.

Having found that the case should be converted, the Court must do something, at least in regard to the professional fees, to return some of the misused estate funds to the estate. As stated above, the Code sets out specific rules for professionals to comply with in order to be compensated. Absent compliance with the Code and Rules, an attorney has no "absolute right" to an award of compensation. *In re Anderson,* 936 F.2d 199 (5th Cir.1991). This is particularly true when the attorney fails to seek prior approval of employment. *Id.*

In the absence of compliance with the Code and Rules, the Court believes that where fees have been paid to an unapproved attorney, the return of the compensation is the most appropriate remedy. *In re Land,* 943 F.2d 1265 (10th Cir.1991); *In re Placid Oil Co.,* 158 B.R. 404 (N.D.Tex.1993). The failure of counsel to follow the requirements of the Code and Rule is grounds for requiring a return of any funds paid. *In re Chapel Gate Apartments, Ltd.,* 64 B.R. 569 (Bankr.N.D.Tex.1986).

---

14. Fed.R.Bankr.P. 2016(a) provides:

Application for Compensation or Reimbursement. An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested. An application for compensation shall include a statement as to what payments have theretofore been made or promised to the applicant for services rendered or to be rendered in any capacity whatsoever in connection with the case, the source of the compensation so paid or promised, whether any compensation previously received has been shared and whether an agreement or understanding exists between the applicant and any other entity for the sharing of compensation received or to be received for services rendered in or in connection with the case, and the particulars of any sharing of compensation or agreement or understanding therefor, except that details of any agreement by the applicant for the sharing of compensation as a member or regular associate of a firm of lawyers or accountants shall not be required. The requirements of this subdivision shall apply to an application for compensation for services rendered by an attorney or accountant even though the application is filed by a creditor or other entity. Unless the case is a Chapter 9 municipality case, the applicant shall transmit to the United States trustee a copy of the application.

In the *Land* case, the Tenth Circuit held that return of compensation was the appropriate remedy where debtor-in-possession failed to obtain court approval before payment to counsel. This remedy was appropriate even in absence of determination that fees were excessive. The fees were ordered disgorged on the Court's own initiative. In the case at bar, the Bankruptcy Administrator requested disgorgement of fees in his motion to dismiss or convert. *See also Willis v. Cruse (In re Samford)*, 125 B.R. 230 (E.D.Mo.1991); *In re Prime Foods of St. Croix, Inc.*, 80 B.R. 758 (D.V.I.1987).

Having determined that disgorgement is the appropriate remedy, the issue becomes of where to direct the professionals to pay the fees. The Court believes that these funds should be paid to the Chapter 7 estate. In *In re Pannebaker Custom Cabinet, Corp.*, 198 B.R. 453 (Bankr.M.D.Penn.1996), the court ordered the Chapter 11 case converted to one under Chapter 7. The court conducted an investigation into various payments which debtor's counsel received from the debtor without prior notice to interested parties or approval of the bankruptcy court. The court concluded that the attorneys would be required to disgorge these funds. There was also unauthorized funds paid to debtor's accountants which the court also required part disgorgement. The court ordered that the disgorged funds be turned over to the Chapter 7 trustee. In *In re Larsen*, 190 B.R. 713 (Bankr.D.Me.1996), the court also converted the case to Chapter 7 and ordered disgorgement. The debtor's attorney received payments for legal services from the debtors without Court authority. The Chapter 7 trustee investigated and filed an objection to any fees being paid to counsel. The Court ordered that the funds paid by the debtors be disgorged to the Chapter 7 trustee.

In order to remedy the improper payment of professional fees, the Court believes the professional fees paid by the debtor-in-possession should be turned over to the Chapter 7 trustee. The professional fee payment process set out within the Code is designed to protect the debtors-in-possession, creditors, and other parties in interest. Professionals will not be allowed to profit when they blatantly violate the provisions of the Code and Rules.

## CONCLUSION

From the facts established at the hearing, it is clear that the debtor-in-possession engaged in a practice that is completely contrary to the policy of Title 11. The debtor-in-possession failed to follow the clear mandates of Chapter 11 administration. The debtor-in-possession allowed a non-complex case to pend for over 18 months without filing a plan or disclosure statement. The debtor-in-possession engaged in a practice of exchange of payments with an insider without notice to any party or Court approval. The debtor-in-possession employed professionals without Court approval in violation of § 327(a) and Rule 2014. The debtor-in-possession paid these professionals post petition without Court approval in violation of § 330 and Rule 2016. Any of these grounds might have been sufficient to constitute cause warranting dismissal or conversion. Taken all together, they clearly demonstrate the case should be dismissed or converted. Thus, it is hereby ORDERED that this case shall be converted to Chapter 7. It is further ORDERED that the legal professionals and the accountants are to disgorge to the Chapter 7 trustee ALL professional fees paid including the amount of $9,212.50 ($1,504.00 in accountant fees and $7,708.50 in legal fees) reported as being paid in the operating reports. It is up to the Chapter 7 trustee to determine whether to pursue the insider for the financial transactions that took place.